## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

MICHAEL R. HENRY,
Appellant,

v.

FRANK KENDALL, III,
Secretary of the Air Force,

Appellee.

On Appeal from the United States
District Court for the District of Columbia

### FINAL BRIEF FOR APPELLEE

MATTHEW M. GRAVES
United States Attorney

BRIAN P. HUDAK
JANE M. LYONS
Assistant United States Attorneys

ANNA D. WALKER
Assistant United States Attorney
601 D Street NW
Washington, D.C. 20530
(202) 252-2544

Civ. A. No. 22-2559

# CERTIFICATE AS TO
## PARTIES, RULINGS, AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

**Parties and Amici.** The petitioner-appellant is Michael R. Henry. The respondent-appellee is Frank Kendall, III, in his official capacity as Secretary of the Air Force. There is no amicus.

**Ruling Under Review.** At issue in this appeal is the August 3, 2022, memorandum opinion and order by the Honorable Colleen Kollar-Kotelly granting the defendant's motion to dismiss. The opinion is publicly available on Westlaw at 2022 WL 3081408 and JA064.

**Related Cases.** This case has not previously been before this Court. Undersigned counsel is unaware of any pending related cases.

  /s/ Anna D. Walker
ANNA D. WALKER
Assistant United States Attorney

# CONTENTS

STATEMENT OF JURISDICTION ............................................................ 1

STATEMENT OF THE ISSUES ................................................................ 1

PERTINENT STATUTE ............................................................................ 3

COUNTERSTATEMENT OF THE CASE ................................................ 4

    I.    Henry's Court-Martial Proceedings and Appeals ...................... 4

        A.    Court-Martial. ................................................................ 4

        B.    First Appeal. ................................................................. 8

        C.    Rehearing. .................................................................... 9

        D.    Second Appeal. ............................................................. 9

        E.    Appeal to Court of Appeals for the Armed Forces. ............... 15

    II.    This Litigation. .......................................................... 16

SUMMARY OF THE ARGUMENT ........................................................ 17

STANDARD OF REVIEW ...................................................................... 21

ARGUMENT ........................................................................................... 21

    I.    The Court Applies the "Void" Standard of Review in Cases Like This Involving a Non-Custodial Collateral Challenge. ...................... 21

    II.    Henry's Non-Custodial Collateral Challenge is not Jurisdictional, Thus There Is No Basis to Apply Heighted De Novo Review. ........................................................................ 24

III. The Court of Criminal Appeals Gave Full and Fair Consideration to Henry's Claims By Properly Affording Him Full Article 66 Review Before Affirming Henry's Convictions under Counts II and III and Sentence; Thus, Its Judgment Is Not Void. ................27

    A. The Review of Counts II and III in Henry's First Appeal Satisfied Article 66. ................28

    B. The Review in *Henry II* Satisfied Article 66. ........33

    C. Henry's Sentence is Not Void. ................40

IV. Henry Cannot Establish that the Military Court's Judgment Violated His Due Process Rights or Fails to Conform with Supreme Court Standards. ................44

CONCLUSION ................49

CERTIFICATE OF SERVICE ................1

CERTIFICATE OF COMPLIANCE ................1

# TABLE OF AUTHORITIES

CASES                                                              PAGE(S)

*Bahlul v. United States,*
  840 F.3d 757 (D.C. Cir. 2016)...............................................................44
*\*Burns v. Wilson,*
  346 U.S. 137 (1953) ...............................................................................21
*Dalkin Applied Ams. Inc. v. EPA,*
  39 F.4th 701 (D.C. Cir. 2022) ................................................................4
*Foont v. United States,*
  93 F.3d 76 (2d Cir. 1996)......................................................................43
*Fox v. District of Columbia,*
  794 F.3d 25 (D.C. Cir. 2015) ................................................................4
*Fricke v. Sec' of Navy,*
  509 F.3d 1287 (10th Cir. 2007) ..........................................................22
*Henderson ex rel. Henderson v. Shinseki,*
  562 U.S. 428 (2011) .............................................................................23
*Kassman v. Am. Univ.,*
  546 F.2d 1029 (D.C. Cir. 1976) ...........................................................4
*Kauffman v. Sec'y of Air Force,*
  415 F.2d 991 (D.C. Cir. 1969)......................................................21, 46
*Kowal v. MCI Commc'ns Corp.,*
  16 F.3d 1271 (D.C. Cir. 1994).............................................................20
*Larrabee v. Del Toro,*
  45 F.4th 86 (D.C. Cir. 2022).................................................................22
*MOAC Mall Holdings LLC v. Transform Holdco LLC,*
  143 S. Ct. 927 (2023) .....................................................................23, 24
*U.S. v. Morgan,*
  346 U.S 502 (1954)...............................................................................44
*New v. Cohen,*
  129 F.3d 639 (D.C. Cir. 1997)..............................................................43
*Priest v. Sec'y of Navy,*
  570 F.2d 1013 (D.C. Cir. 1977) .....................................................21, 22
*Robinson v. Dep't of Homeland Sec. Off. of Inspector Gen.,*
  71 F.4th 51 (D.C. Cir. 2023)................................................................23
*\*Sanford v. United States,*
  586 F.3d 28 (D.C. Cir. 2009) ..............................................27, 45, 46, 47

*Schlesinger v. Councilman,*
  420 U.S. 738 (1975) ................................................................22, 43

*Schlup v. Delo,*
  513 U.S. 298 (1995) ............................................................................ 39

*State v. Montesinos,*
  28 M.J. 38 (C.M.A. 1989) .................................................................. 30

*U.S. ex rel. New v. Rumsfeld,*
  448 F.3d 403 (D.C. Cir. 2006)....................................................1, 21, 27

*U.S. v. Denedo,*
  556 U.S. 904 (2009) ........................................................................... 20

*United States v. Cotton,*
  535 U.S. 625 (2002) ........................................................................... 24

*United States v. Dyer,*
  136 F.3d 417 (5th Cir. 1998) .............................................................. 43

*United States v. Hemmingsen,* No. ARMY
  20180611, 2021 WL 1511636 (A. Ct. Crim. App. Apr. 15, 2021).........30

*United States v. Mandanici,*
  205 F.3d 519 (2d Cir. 2000)................................................................ 43

*United States v. Olano,*
  570 U.S. 725 (1993) ....................................................................44, 45

*United States v. Smith,*
  41 M.J. 385 (C.A.A.F. 1995) ...................................................28, 29, 30

*United States v. Steele,*
  83 M.J. 188 (C.A.A.F. 2023) ..........................................31, 33, 34, 35

*United States v. Wyatt,*
  33 M.J. 495 (C.A.A.F. 1991) .............................................................. 26

*Wood v. Hall,*
  130 F.3d 373 (9th Cir. 1997) .............................................................. 39

## Statutes

10 U.S.C. § 866................................................................................15, 25
10 U.S.C. § 866(c)...................................................................3, 27, 28, 31
10 U.S.C. § 871(c)(1)..........................................................................25, 26
28 U.S.C. § 1291.......................................................................................1
28 U.S.C. § 1331.......................................................................................1

## Federal Rules

Fed. R. App. P. 4(a)(1)(B) ........................................................ 1

Fed. R. App. P. 10(a) .............................................................. 4

Fed. R. Evid. 201(b)(2) ........................................................... 4

Federal R. of Civ. P. 12(b)(6) ............................................. 16, 20

# GLOSSARY

Air Force                      United States Air Force

UCMJ                           Uniform Code of Military Justice

# STATEMENT OF JURISDICTION

The district court had narrow jurisdiction to review Henry's collateral non-custodial challenge to the military tribunal's judgment pursuant to 28 U.S.C. § 1331. *United States ex rel. New v. Rumsfeld*, 448 F.3d 403, 406 (D.C. Cir. 2006). On August 3, 2022, the District Court granted the Secretary's motion to dismiss, and on September 28, 2022, Henry timely noticed an appeal. *See* Fed. R. App. P. 4(a)(1)(B).

This Court has jurisdiction under 28 U.S.C. § 1291.

# STATEMENT OF THE ISSUES

In the Secretary's view, the questions presented are:

1.      Whether federal courts review collateral attacks on court-martial decisions when the members are no longer in custody only to determine whether the conviction should be set aside as "void."

2.      Whether Henry's challenge to the sufficiency of the Air Force Court of Criminal Appeal's application of review pursuant to Article 66 of the Uniform Code of Military Justice ("UCMJ") raises a jurisdictional claim that requires *de novo* review because the Secretary subsequently discharged Henry for bad conduct based on the same events.

3.      Whether the Air Force Court of Criminal Appeals fully and fairly considered Henry's claim that the facts and law supporting his

convictions under Charges II and III and resentence were insufficient after a rehearing on Charge I when the Court also determined that (1) the Court of Criminal Appeal had already reviewed the sufficiency of Henry's convictions under Charges II and III in *Henry I* and (2) by reviewing the entire record de novo in *Henry II* to determine whether the impact of the evidence adduced at the rehearing affected the Court's original decision, finding these convictions legally and factually sufficient to be sustained, under the law-of-the-case doctrine.

4.   Whether Henry waived his constitutional due process claim that the Air Force Court of Criminal Appeals' judgment violated Henry's due process rights by failing to conduct a proper Article 66 review or whether a full and fair review of the Court of Criminal Appeals' judgment establishes that Henry was granted the process to which he claims he was due; and also whether the Court of Criminal Appeals' judgment conforms with Supreme Court Standards when there is no constitutional decision at issue on collateral review and where Henry has not indicated any Supreme Court standard with which the judgment must conform.

# PERTINENT STATUTE

## 10 U.S.C. § 866(c) (1996-2018)

In a case referred to it, the Court of Criminal Appeals may act only with respect to the findings and sentence as approved by the convening authority. It may affirm only such findings of guilty, and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved. In considering the record, it may weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses.

# COUNTERSTATEMENT OF THE CASE

## I. Henry's Court-Martial Proceedings and Appeals

### A. Initial Court-Martial Proceedings.

In 2015, Michael Henry, then a Staff Sergeant in the United States Air Force, was tried by a court-martial on charges arising from three separate incidents involving two different women.[1]  According to the military's evidence, the first incident occurred with EW, a civilian, with whom Henry had a three-month relationship beginning in December

---

[1]    This statement of the case draws from the relevant military court decisions, which are publicly available on Westlaw, and the authenticity of which are not disputed.  *See* Fed. R. Evid. 201(b)(2).  After all, the record of trial was not provided to the District Court and is not part of the record on appeal. Fed. R. App. P. 10(a).  Henry's opening brief, nonetheless, cites to extra-record evidence that the Court should decline to consider, as the Court "do[es] not allow parties to supplement the record unless they can demonstrate the unusual circumstances justifying departure from this general rule."  *Dalkin Applied Ams. Inc. v. EPA*, 39 F.4th 701, 716 (D.C. Cir. 2022) (quotation marks omitted).  Here, Henry never argued to the District Court that it should refrain from issuing its decision without reviewing the record of trial, and he has waived that argument by (1) not arguing it before the District Court, and (2) not arguing it in his opening brief.  *See, e.g., Fox v. District of Columbia*, 794 F.3d 25, 29 (D.C. Cir. 2015) ("[A]rgument inadequately raised in an opening brief is waived[.]"); *Kassman v. Am. Univ.*, 546 F.2d 1029, 1032 (D.C. Cir. 1976) (per curiam) ("Litigative theories not pursued in the trial court ordinarily will not be entertained in an appellate tribunal.").

2013.[2] *See United States v. Henry*, 76 M.J. 595, 598 (A.F. Ct. Crim. App. 2017) ("*Henry I*"); JA82.  About one month after their breakup, Henry appeared at EW's house uninvited, asked EW why she was being a "f[* * *]ing b[* * *]," and told her he would "teach [her] a lesson."  *Id.*  Henry then hit EW's door with a baseball bat until she would let him in.  *Id.*

Once inside, Henry demanded to see EW's phone, which was in EW's bedroom.  *Henry I*, 76 M.J. at 598; JA82–83.  Inside the bedroom, Henry sent an email to EW's ex-boyfriend informing him that she was "f[* * *]ing" Henry and compared his penis size to her ex-boyfriend's.  *Id.*  Henry then choked EW and with a balled-up fist, told EW that he would destroy her face so badly she would be unrecognizable to her parents.  *Id.*  After releasing EW from his grip, EW curled up on her bed and sobbed.  *Id.*  Henry calmed down, apologized, and began to leave.  *Id.*  But

---

[2]    The Air Force does not release the names of victims of sex offenses. *See* Department of Air Force Instruction 51-201, Administration of Military Justice (Jan. 24, 2024), § 34.2.3, https://static.e-publishing.af.mil/production/1/af_ja/publication/dafi51-201/dafi51-201.pdf (last visited Apr. 4, 2024). Thus, none of the military court decisions which Henry collaterally attacks in this case refer to the victims by name.  Because Henry's collateral attack focuses specifically on those military decisions, the Secretary has referred, too, only to victims discussed in those military tribunal decisions by their initials.

according to the military's evidence, before leaving, Henry changed his mind, forced EW to have sex with him, and then left. *Id.*

According to the government's evidence, another incident involving EW occurred a week later for which Henry was initially charged. *See United States v. Henry*, No. ACM 38886, 2020 WL 278402, at *1 (A.F. Ct. Crim. App. 2020) ("*Henry II*"); JA102–103. But before Henry's arraignment, the prosecution withdrew all charges related to that other incident. *See Henry II*, 2020 WL 278402, at *2; JA105.

Separately, around the same time when Henry dated EW, he also dated Airman First Class KJ ("KJ"). *See Henry I*, 76 M.J. at 598–99; JA83–84. The second and third incidents leading to the charges for which Henry was tried by court-martial occurred between Henry and KJ. *See id.* According to the government's evidence, one night with KJ, Henry became forceful during sex, slapped KJ, and choked her until she gasped for air. *See id.* Over KJ's protests, Henry then had anal intercourse with her. *See id.*

Three days later, Henry told KJ not to contact him until she stopped speaking to other men. *See id.* KJ then blocked Henry's number. *See id.* The next day, Henry appeared at KJ's house without warning and threw

rocks at her window until she opened the door to him. *See id.* Henry then went into KJ's bedroom, where he grabbed KJ by the throat, then grabbed her hair, forced her to her knees, and made her perform fellatio. *See id.* Henry then slapped KJ's face, pushed her to the floor and performed anal and vaginal intercourse. *See id.*

Henry was charged with rape and sexual assault against EW and KJ in violation of UCMJ Article 120 ("Charge I") and was further charged with assault consummated by battery against EW in violation of UCMJ Article 128 ("Charge II"), and communicating a threat against EW in violation of UCMJ Article 134 ("Charge III"). *See Henry I*, 76 M.J. at 598; JA81–82; *Henry II*, 2020 WL 278402, at *2, 4; JA104, 108.

For the charges related to Henry's alleged actions against EW, on April 23, 2015, the court-martial convicted Henry of rape under Charge I, assault consummated by battery under Charge II, and communicating threats under Charge III. *See Henry II*, 2020 WL 278402, at *1; JA102. The court-martial, however, acquitted Henry of all rape and sexual assault charges related to the first incident involving KJ, *see Henry I*, 76 M.J. at 599 n.2; JA83 n.2, and convicted Henry of the lesser offense of sexual assault under Charge I related to the second incident involving

7

KJ. *See Henry I*, 76 M.J. at 609; JA98–99. The adjudged and approved sentence for these convictions was dishonorable discharge, confinement for seven years, forfeiture of all pay and allowances, and reduction in rank to E-1. *See Henry I*, 76 M.J. at 598; JA82.

## B.    First Appeal.

Henry appealed his convictions to the Air Force Court of Criminal Appeals, which issued its decision on February 17, 2017. *See Henry I*, 76 M.J. at 598; JA81–83; *Henry II*, 2020 WL 278402, at *1; JA103. Relevant to this case, the court found that an instruction provided to the court-martial panel was unconstitutional and not harmless, and therefore, it could not affirm Henry's rape and sexual assault convictions against EW and KJ under Charge I. *See Henry I*, 76 M.J. at 608, 610; JA98, 101. For the remaining two charges of battery and communicating threats against EW, Charges II and III, the Court determined that the evidence sustaining these convictions was both legally and factually sufficient and affirmed the convictions. *See Henry I*, 76 M.J. at 609 n.17; JA100 n.17. In reaching these conclusions, the Air Force Court of Criminal Appeals reviewed the entire record. *See Henry I*, 76 M.J. at 608, 609 n.17; JA98, 100 n.17. The court then set aside for rehearing only Henry's convictions

for rape and sexual assault under Count I, along with the sentence. *See Henry I*, 76 M.J. at 610; JA101.

## C.  Rehearing.

A rehearing on Charge I, involving rape against EW and sexual assault against KJ, was held. *See Henry II*, 2020 WL 278402, at *1; JA103. This time, the court-martial found Henry not guilty of any of these offenses. *See id.*

Henry was therefore resentenced for only his prior convictions of battery and communicating a threat against EW under Charges II and III. *See id.* After a new sentencing hearing, the court-martial adjudged the following punishment: a bad-conduct discharge, twelve months confinement, reduction to the grade of E-4, and a reprimand. *See id.* With the exception of the reprimand, the convening authority approved all other components of this sentence. *See id.*

## D.  Second Appeal.

Henry then appealed his new sentence, along with his prior convictions under Charges II and III, for a second time, to the Air Force Court of Criminal Appeals. *See generally Henry II*, 2020 WL 278402; JA102. Henry argued that the evidence was factually insufficient to

support his convictions under Charges II and III and that, alternatively, these prior convictions and new sentence should be dismissed because new evidence adduced at the rehearing destroyed EW's credibility. *See Henry II*, 2020 WL 278402, at *1; JA102. In addition, Henry argued that the sentence should be set aside because of a disqualified trial counsel's involvement in the rehearing. *See id.*

Regarding Henry's convictions under Charges II and III, the Air Force Court of Criminal Appeals first acknowledged that it had already fully reviewed and affirmed the legal and factual sufficiency of Charges II and III in *Henry I*, which were not at issue on the rehearing, and that "generally" under UCMJ Article 66, the court need not conduct a second plenary review of those charges. *See Henry II*, 2020 WL 278402, at *2; JA104–105; *see also Henry I*, 76 M.J. at 609 n.17; JA100 n.17. "Given the unique facts and circumstances involved in this case," however, the Air Force Court of Criminal Appels nonetheless "[chose] to revisit the factual sufficiency of the previously affirmed offenses," based on a review of "all of the evidence presented." *Henry II*, 2020 WL 278402, at *2; JA105. The court further determined that it should not apply the law-of-the-case doctrine to Charges II and III if all the evidence demonstrated that those

convictions were clearly erroneous and manifestly unjust. *See Henry II*, 2020 WL 278402, at *4; JA107.

Based on this standard, the court examined the complete trial record and, after "making allowances for not having personally observed the witnesses," the court found that its decision in *Henry I* to affirm Charges II and III was neither clearly erroneous nor resulted in manifest injustice because the evidence in the record was legally and factually sufficient to sustain these charges. *Henry II*, 2020 WL 278402, at *2, 5; JA105, 109.

In reaching this determination, the court reviewed any "new" or "exculpatory" evidence adduced at the rehearing. *See Henry II*, 2020 WL 278402, at *2; JA105. Specifically, the court recounted the fact that EW originally did not want to participate in the original trial and was again reluctant to participate in the rehearing; that EW was questioned both prior to the rehearing and at the rehearing about her description of another sexual assault allegation involving her and Henry that was withdrawn prior to the original trial; and that the prior prosecutor, who was called as a witness at the rehearing, testified that he had disclosed

to defense counsel the withdrawn sexual assault allegations prior to the original trial. *See Henry II*, 2020 WL 278402, at *2–4; JA105–107.

In the end, however, the court noted that, EW's credibility was no more an issue at the rehearing than at the original hearing. *See Henry II*, 2020 WL 278402, at *5; JA109. In particular, the court found that:

> Having reviewed the testimony of EW at the original trial and the rehearing, we are not persuaded by Appellant's allegation that "new" evidence adduced at the rehearing destroyed EW's credibility and disproves her account of the events surrounding the offenses. EW was cross-examined on a number of inconsistencies at both the original trial and the rehearing. At the original trial, EW was challenged regarding the fact that she did not report any of the allegations, the absence of evidence of damage to her front door, and the absence of any physical manifestations of the choking—no red marks or bruising on her neck, no petechiae in her eyes, and no hoarseness. At the rehearing, EW was similarly challenged on these same inconsistencies, as well as the fact that she reported the sexual encounter after the charged rape as a second sexual assault. Because the assault and battery and communications of a threat charges were not an issue at the rehearing, there was understandably less detail in her testimony regarding those incidents.

*Henry II*, 2020 WL 278402, at *8, JA114.

The court also noted that, while the events involving EW and underlying Charges I, II, and III all occurred on the same date, "the mere fact that the members at the rehearing found [Henry] not guilty of the sexual offense in Charge I does not negate the previous findings of guilt"

as to the charge of battery and communicating threats "made by different members who heard different evidence—including the testimony of [Henry]." *Henry II*, 2020 WL 278402, at *4; JA108. The court then summarized Henry's testimony from the original hearing, in which Henry described his relationship with EW as, for example "dramatic" and that the two would go from "'loving each other to hating each other to [having] make-up sex.'" *Id.*

The court concluded that "[h]aving considered all of the evidence presented, we find the impact of the evidence adduced at the rehearing was not significantly different, and our original decision finding [Henry's] contention that the evidence is not legally or factually sufficient to sustain these convictions to be without merit was neither clearly erroneous nor a manifest injustice." *Henry II*, 2020 WL 278402, at *2; JA105.

The court separately addressed whether the evidence in the record was sufficient to support Henry's new sentence. Particularly, the court noted that Henry's presented a "robust" case during the second sentencing hearing, *Henry II*, 2020 WL 278402, at *9; JA115, and it recounted a significant portion of EW's unsworn statement presented

during the sentencing hearing, *see Henry II*, 2020 WL 278402, at \*7–8; JA112–114.  In that statement, EW described how Henry became so red in the face and back of his neck, she knew nothing she said was "registering in his brain." *See id.*  And, after hearing Henry tell her that his fists were going to destroy her face so not even her parents could recognize her, EW described believing that she was going to die. *See id.* EW further testified that while she only wanted Henry to get the help he needs, his behavior toward her during the court-martial demonstrated that he had not accepted responsibility for his actions.  *See id.*

Against this statement, the court juxtaposed Henry's counsel final arguments before sentencing.  *See Henry II*, 2020 WL 278402, at \*9; JA115.  The court specifically recounted that counsel summarized the prior court-martial finding simply as Henry "touched EW and said something she thought to be a threat" and that, after vehemently challenging EW's credibility, he asked the members to "send a message to 'this frickin legal office,' the [Sexual Assault Prevention and Responsibility Office] community, and investigators." *Id.*  Based on this complete record, the court concluded that despite the government's request that "the members only impose a bad-conduct discharge," "it is

quite conceivable that [Henry's] lack of remorse and repeated minimization of the nature of the underlying conduct associated with the assault and communication of a threat convictions did not resonate well with the members." *Id.*

In conclusion, the court affirmed that the "approved findings and sentence are correct in [both] law and fact, and [that] no error materially prejudicial to the substantial rights of Appellant occurred." *Henry II*, 2020 WL 278402, at *10; JA117.

## E.    Appeal to Court of Appeals for the Armed Forces.

Henry then appealed to the Court of Appeals for the Armed Forces. *See* Def. Br., *United States v. Henry*, No. 20-0166, 2020 WL 2061273 (C.A.A.F. Mar. 30, 2020) (hereinafter "Henry Armed Forces Br."). In his appeal, Henry raised two issues, including, as relevant to this case was whether the Court of Criminal Appeals incorrectly applied the law-of-the-case doctrine. *See id.* On May 21, 2020, the Court of Appeals for the

Armed Forces denied Petitioner's request for review. *See United States v. Henry*, 80 M.J. 177 (C.A.A.F. 2020).

## II. This Litigation.

On March 31, 2021, Henry initiated this civil action, seeking a fourth review of his court-martial convictions. *See* JA3. In this non-custodial collateral challenge to those convictions, Henry contends that the Air Force Court of Criminal Appeals failed to apply the correct standard of review required by UCMJ Article 66. *See* JA3–4, 9, 12; 10 U.S.C. § 866. For relief, Henry seeks a "writ of error coram nobis" compelling the Air Force to revoke his punitive discharge and to require the Air Force Court of Criminal Appeals to reconsider the record of trial de novo. *See* JA5–6.

The Secretary moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), arguing that the Air Force Court of Criminal Appeals did satisfy Article 66's review standard in *Henry I* and that, in any event, it also conducted a second Article 66 de novo review in *Henry II*. *See* JA18, 33–40.

On August 3, 2022, the District Court granted the Secretary's motion to dismiss. JA64, 80. After reviewing "the pleadings, the relevant

legal authority, and the record as a whole," the District Court concluded that Henry had failed to establish he is entitled to the extraordinary remedy of *coram nobis* because he had received the proper review under Article 66 as to Charges II and III in *Henry I* and received a second Article 66 review of the same charges on rehearing. *See* JA65, 76–77. The court further concluded that, to the extent Henry claims that the court erred when it followed the law-of-the-case doctrine, the *Henry II* court nonetheless only applied that doctrine after it performed a factual sufficiency review of the entire record. *See* JA76. Thus, the court stated, "[i]t would appear that if a court applied an entire factual sufficiency review as required under Article 66, but did so in determining if a decision was clearly erroneous as in this instance, this would still satisfy the Article 66 standard." *Id.*

Having concluded that the Air Force Court of Criminal Appeals satisfied the review standard for Article 66, the District Court dismissed Henry's petition for writ, and this appeal followed. *See* JA80.

## SUMMARY OF THE ARGUMENT

Although framed as a claim for extraordinary *coram nobis* relief, Henry's claim is nothing more than a collateral challenge to his court-

martial convictions and sentence, to which deferential review is commonly applied. For non-custodial challenges, like in this case, collateral relief is not available unless Henry can show that the military judgment at issue is void. Because, non-custodial challenges are more deferential than custodial challenges, which are entitled to the "full and fair" test, a finding that the military court, fully and fairly considered Henry's claims means that the military courts' judgment is not void.

Henry's attempt to deviate from the more deferential standards of review is without merit because his collateral challenge is not jurisdictional. Although Henry claims that the Secretary lacked jurisdiction to implement Henry's bad-conduct discharge, jurisdiction commonly refers to a court's power to decide a case, not the Secretary's power to implement a punishment. Nor, moreover, does Henry cite any authority to support limiting the Secretary's "jurisdiction," otherwise. To the extent Henry challenges the Court of Criminal Appeals' jurisdiction because Henry claims that it failed to conduct a proper Article 66 review, this too lacks merit. A challenge to the standard of review does not challenge the Air Force Court of Criminal Appeals actual jurisdiction to act on a case.

The record shows that the Air Force Court of Criminal Appeals fully and fairly considered Henry's claim that the evidence supporting his convictions under Charges II and III were insufficient by finding—not once, but on two occasions—that Henry's convictions under Charge II and III were factually and legally sufficient, even after a rehearing on Charge I resulted in Henry's acquittal. Specifically, Henry can point to no basis in the record to establish that his first appeal failed to conduct a full a proper review under UCMJ Article 66 or that Henry was entitled to a second Article 66 review. But even if Henry was not entitled to a second Article 66 review on his convictions, he received such review, again, during his second appeal. The fact that the Court applied Article 66's review to determine whether the law-of-the-case doctrine should apply is of no moment because the court had already affirmed Henry's convictions under Charges II and III and needed to confirm that the evidence gathered during the rehearing did not require the court to set aside those convictions.

Similarly, the record shows that the Air Force Court of Criminal Appeals fully and fairly considered Henry's sentence properly under Article 66 before affirming it after a rehearing.

Having found that the military court's judgment fully and fairly considered Henry's claims regarding his convictions under Charges II and III and his resentence, Henry cannot show that the Air Force Court of Criminal Appeals' judgment was void and Henry's undeveloped error argument is without merit.

As a final matter, Henry cannot establish that the Air Force Court of Criminal Appeals' decision violated his due process rights or failed to conform with Supreme Court Standards. Henry failed to raise any constitutional claim on direct appeal and therefore waived it. And even if the Court were to review such claim, Henry can point to no authority to support his claim that the review must be de novo. To the contrary, under controlling law, because a full and fair review shows that the Air Force Court of Criminal Appeals properly applied Article 66 review to Henry's convictions and sentence, there is no process purportedly due to Henry that he was not afforded.

This Court should therefore affirm the District Court's decision to dismiss Henry claims on grounds that collateral relief under *coram nobis* or other applicable legal framework is not warranted.

## STANDARD OF REVIEW

The Court reviews de novo a dismissal under Federal Rule of Civil Procedure 12(b)(6).  *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

## ARGUMENT

## I.   The Court Applies the "Void" Standard of Review in Cases Involving a Non-Custodial Collateral Challenge.

Although framed as a claim for extraordinary relief under *coram nobis*, Henry's claims are nothing more than an ordinary collateral challenge to his court-martial convictions and sentence.  *See United States v. Denedo*, 556 U.S. 904, 917 (2009) ("The writ of error coram nobis is an extraordinary writ; and an extraordinary remedy should not be granted in the ordinary case.") (cleaned up).

For such collateral challenges to court-martial acts, there are two standards of review.  First, for custodial challenges that seek habeas review, the Court applies the "full and fair consideration" standard to "determine whether . . . fair consideration" was given to each of the soldier's claims.  *Burns v. Wilson*, 346 U.S. 137, 144 (1953); *see also Kauffman v. Sec'y of Air Force*, 415 F.2d 991, 997 (D.C. Cir. 1969).  But for non-habeas petitions, like in this case because the petitioner is not in

custody, the Court applies the "void standard," which bars "collateral relief from the consequences of a court-martial judgment" unless the judgment is void." *Priest v. Sec'y of Navy*, 570 F.2d 1013, 1016 (D.C. Cir. 1977); *see* Appellant Br., at 2 (stating that this case is a "non-custodial collateral attack on a conviction by a court-martial.").

Because "a non-habeas review is if anything more deferential than habeas review of military judgment," a finding that a military judgment gave full and fair consideration to each of the petitioner's claims means that its judgment is not void. *New*, 448 F.3d at 406–08. Therefore, for Henry to establish a basis for collateral relief in this case, he must establish that the military tribunal not only failed to consider his arguments fully and fairly, but that the judgment is void. *Schlesinger v. Councilman*, 420 U.S. 738, 748 (1975).

A judgment is not void, however, merely due to error; rather, for the judgement to be void it must suffer from some "fundamental defect." *Councilman*, 420 U.S. at 748. Instead, "[w]hether a judgment may be deemed void turns upon two factors: the nature of the alleged defect in the proceedings and the gravity of the harm from which relief is sought." *Priest*, 570 F.2d at 1016 (citing *Councilman*, 420 U.S. at 748). "These

[two factors, moreover] must be considered in light of the deference Congress expected the military justice system to receive in the federal courts." *Id.*

A court-martial, having no proper jurisdiction over a petitioner is, for example, a fundamental defect. *See Larrabee v. Del Toro*, 45 F.4th 86–87 (D.C. Cir. 2022); *see also Fricke v. Sec' of Navy*, 509 F.3d 1287, 1289–90 (10th Cir. 2007) (affirming that the Court's review of military convictions "is limited generally to jurisdictional issues and to determinations of whether the military gave fair consideration to each of the petitioner's constitutional claims (citations omitted)).

But not every jurisdictional claim is jurisdictional merely because a petitioner claims it is so, and the Supreme Court and this Court have "endeavored 'to bring some discipline' to this area" and clarify their "past sometimes-loose use of the word 'jurisdiction.'" *MOAC Mall Holdings LLC v. Transform Holdco LLC*, 143 S. Ct. 927, 936, n.7 (2023) (quoting *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011)); *see also Robinson v. Dep't of Homeland Sec.*, 71 F.4th 51, 56 n.1 (D.C. Cir. 2023) (overturning decades-old precedent interpreting a provision of the Civil Service Reform Act as jurisdictional via an *Irons* footnote).

**II.  Henry's Non-Custodial Collateral Challenge is not Jurisdictional, Thus There Is No Basis to Apply Heightened <u>De Novo Review</u>.**

Henry contends that his collateral challenge must be reviewed under heightened *de novo* review because it is jurisdictional.  *See* Appellant Br, at 14.  Specifically, Henry alleges that because the Air Force Court of Criminal Appeals did not apply the proper standard of review, under UCMJ Article 66, before affirming Henry's convictions and reduced sentence, the Secretary of the Air Force did not have jurisdiction to execute his bad-conduct discharge.  *See id.* at 15.

But this argument is without merit because "jurisdiction," is generally understood to refer to "a court's power to decide a case or issue a decree."  Jurisdiction, Black's Law Dictionary (11th ed. 2019).  Henry cites no authority characterizing the Secretary's implementation of a sentence as an exercise of "jurisdiction."  Nor, moreover, does he cite anything limiting the Secretary's "jurisdiction" to implement a punishment when there is error in the court martial or appellate proceedings.

To the extent, Henry argues that the Air Force Court of Criminal Appeals lacked jurisdiction to affirm Henry's sentence absent conducting

a proper Article 66 review, this argument, too, lacks merit, because challenging the standard of review applied by the Air Force Court of Criminal Appeals does not implicate its jurisdiction to act in his case. *See United States v. Cotton*, 535 U.S. 625, 630–32 (2002) (rejecting an "elastic concept of jurisdiction" and defining it as the court's "power to adjudicate the case.").

Likewise, without clear Congressional intent to the contrary, courts will not construe "preconditions to facilitate the fair and orderly disposition of litigation," as jurisdictional. *See MOAC Mall*, 598 U.S. at 289, 301 ("We routinely hold that congressional commands are nonjurisdictional despite emphatic directives."). And here, nothing in the operative text of UCMJ Article 66 indicates that Congress intended an Article 66 review to be jurisdictional. That Article states:

> In a case referred to it, the Court of Criminal Appeals may act only with respect to the findings and sentence as approved by the convening authority. It may affirm only such findings of guilty, and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved. In considering the record, it may weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses.

10 U.S.C. § 866. While the first sentence in this text refers to the power of the Air Force Court of Criminal Appeals to act, the next sentences describe only the relevant standard by which the Air Force Court of Criminal Appeals may affirm any "findings and sentences" that are properly under its review.

Henry points to UCMJ Article 71(c)(1), to support the contention that "a proper" Article 66 review is required for a judgment to be final so that a bad-conduct discharge can be executed. *See* 10 U.S.C. § 871(c)(1). But nothing in this provision states as much. The statute provides, in relevant part, that a judgment is final when a petition for review by the Court of Appeals for the Armed Forces is rejected. *See id.* Here, following the final decision by the Air Force Court of Criminal Appeals affirming Henry's conviction and sentence, Henry appealed to the Court of Appeals for the Armed Forces. When that court denied Henry's petition, that judgment became final. *See id.*

Henry also cites to *United States v. Wyatt*, 33 M.J. 495, 496 n.1 (C.A.A.F. 1991), for the proposition that "[e]xecution of a punitive discharge before completion of a proper Article 66(c) appellate review is a nullity." Appellant Br. at 15. But nothing in this decision supports

that proposition; rather the decision explains only that a military service member cannot be deemed to have waived his petition for review by the Court of Appeals for the Armed Forces if there is no proof that he was served with the decision by the lower court in the first place. *See Wyatt*, 33 M.J. at 496 n.1.

At a minimum, Henry admits that *de novo* review is not appropriate for a collateral challenge to a military tribunal's judgment, where the collateral attack does not raise any jurisdictional claims. *See* Appellant Br, at 14. Thus, because Henry's challenge to the Court of Criminal Appeals' application of Article 66 review is not jurisdictional, the Court need not apply any heightened *de novo* review to this case.

## III. The Court of Criminal Appeals Fully and Fairly Considered Henry's Claims By Properly Affording Him Full Article 66 Review Before Affirming the Convictions under Counts II and III and Sentence, and Its Judgment Is Not Void.

As previously discussed, because Henry admits that this case raises a non-custodial challenge to his conviction and reduced sentence, the correct standard of review in this case is the more deferential "void" standard. *See* Appellant Br., at 2. Thus, a finding that the military courts in this case gave full and fair consideration to Henry's claims

raised during his military proceedings will satisfy the more deferential standard that the judgment is not "void." *New*, 448 F. 3d at 408.

Henry alleges that the Air Force Court of Criminal Appeals' review is not full and fair because it failed to apply the appropriate review before affirming his convictions and sentence as required by UCMJ Article 66(c). *See* Appellant Br. at 17. Pursuant to Article 66(c), a military court must conduct a de novo review of the entire record before it can affirm findings of guilt or sentence. *See* 10 U.S.C. § 866(c); *Sanford v. United States*, 586 F.3d 28, 30 (D.C. Cir. 2009). Ultimately, this review must examine whether the conviction or sentence is correct as a matter of law and fact. *See* 10 U.S.C. § 866(c). Henry also alleges that this review must be "plenary." *See* Appellant Br. at 17–18.

## A. The Review of Counts II and III in Henry's First Appeal Satisfied Article 66.

Henry contends that the Air Force Court of Criminal Appeals failed in *Henry I* to engage in a proper plenary review of Counts II and III because the evidence raised at the rehearing held subsequent to that appeal was not, obviously, part of the record prior to the rehearing. *See* Appellant Br. at 17–18. But as the Air Force Court of Criminal Appeals explained in *Henry II*, the court had conducted a plenary review as to

Charges II and III in *Henry I*, and therefore was not required by Article 66 to conduct a second plenary review. *Henry II*, 2022 WL 278402, at *4 (citing *United States v. Smith*, 41 M.J. 385, 386 (C.A.A.F. 1995)); JA107.

Henry argues that reliance on *Smith* is misplaced for several reasons. But Henry cites no authority for why the Air Force Court of Criminal Appeals could not have fairly relied on *Smith* given the record in this case. *See* JA73. As the District Court explained, in *Smith*, the appellant was convicted of larceny and the decision was remanded by the appellate court after a review pursuant to Article 66. *See* JA72 (citing *Smith*, 41 M.J. at 385). On remand, a new defense counsel briefed two additional issues not previously considered and outside the scope of remand. *See id.* The court then found that "although these issues were novel and not previously subject to a review pursuant to Article 66," they were outside the scope of remand and therefore the court did not have to consider them because the appellant had already received an Article 66 review. JA72–73.

Henry claims that *Smith* is distinguishable because the only issue remanded in *Smith* involved a potential conflict of interest between the appellant and his counsel, which had nothing to do with the appellant's

guilt or innocence. *See* Appellant Br. at 19. Thus, Henry reasons that the Article 66(c) review performed in *Smith* prior to remand was "plenary" because the remand added no relevant evidence concerning guilt. *See id.* By comparison, Henry suggests that the remand in this case resulted in new evidence and, unlike in *Smith*, a new sentencing. *See id.* at 20–22. But like in *Smith*, just because Henry had a rehearing on Charge I, and his sentence was remanded, this does not negate the sufficiency of review for his convictions under Charges II and III, because the latter charges were not included in the scope of the remand. *See Henry I*, at 610; JA101.

Henry next claims that *Smith* is distinguishable because the appellate court, on remand, could not consider the additional issues raised by appellate counsel pursuant to the remand order. *See* Appellant Br. at 20 (citing *States v. Montesinos*, 28 M.J. 38, 44 (C.M.A. 1989)). But Henry overstates *Smith*, which did not reach the question of whether new issues could not be considered outside of a remand order and held only that, because the appellant had already received one Article 66 review, declining to consider these additional issues was not in error. *See Smith*, 41 M.J. at 386; *see also United States v. Hemmingsen*, No. ARMY

20180611, 2021 WL 1511636, at *1 (Army Ct. Crim. App. Apr. 15, 2021) (exercising discretion to hear new issues on remand because the specific language of the remand left open the possibility of raising new issues and the new issues were closely related to the issues remanded and an adequate record was available).

In his brief, Henry now relies on caselaw decided after he filed his petition in the District Court to support the proposition that new arguments raised outside the scope of remand must be reviewed pursuant to Article 66 unless waived or forfeited. *See* Appellant Br. at 21 (citing *United States v. Steele*, 83 M.J. 188, 191 (C.A.A.F. 2023)). But unlike in *Steele*, the sufficiency of Henry's convictions under Charges II and III was already properly tested in *Henry I* and was not a new issue raised for the first time after the rehearing. Thus, *Steele* does not negate that, under Article 66, an appellant is generally entitled to only one plenary de novo review of each finding of guilt and sentence that the Air Force Court of Criminal Appeals chooses to affirm. 10 U.S.C. § 866(c).

Assuredly, the Air Force Court of Criminal Appeals in *Henry I* did conduct the review required under Article 66 as to Charges II and III. In *Henry II*, the Air Force Court of Criminal Appeals noted that in *Henry I*,

"we affirmed the factual sufficiency of the assault consummated by a batter [Charge II] and communication of a threat [Charge III] convictions." *Henry II*, 2022 WL 278402, at *2; JA105. Indeed, in *Henry I*, the court reviewed both the factual and legal record, noting that the case turned largely on witness credibility. *See Henry I*, 76 M.J. at 609; JA100. Specifically, the Air Force Court of Criminal Appeals in *Henry I* recounted that while the "victim's testimony was powerful," "the evidence was not free from conflict." *Henry I*, 76 M.J. at 609; JA99. The Air Force Court of Criminal Appeals noted inconsistences in the evidence, including that Henry and EW had engaged in "rough sex," that there was a lack of physical evidence on EW's door, and medical reports and photographs provided conflicting evidence of trauma. *Id.* Thus, the Air Force Court of Criminal Appeals could not be sure that an erroneous jury instruction was not harmless, and for that reason, remanded Charge I and Henry's sentence for a rehearing, but only affirmed Charges II and III, after reviewing the entirety of their factual and legal sufficiency. *Henry I*, 76 M.J. at 609; JA100.

Based on this record, it cannot be said that Henry did not receive a "plenary review" of Charges II and III in *Henry I* and was therefore not

entitled to a second "plenary review." Indeed, Henry's acquittal on a second court martial on sexual assault charges did not present any additional exculpatory evidence relating to the separate charges with different elements contained in Charges II and III. Nonetheless, even if Henry were entitled to a second Article 66 review of Charges II and III, the Air Force Court of Criminal Appeals in *Henry II*, did just that by agreeing that it would "revisit the factual sufficiency of the previous affirmed offenses," based on the review of "all of the evidence presented," after the re-hearing. *Henry II*, 2022 WL 278402, at *2; JA105.

## B. The Review in *Henry II* Satisfied Article 66.

Henry argues that the review of Charges II and III by the Air Force Court of Criminal Appeals in *Henry II* was also insufficient because the court applied the law-of-the-case doctrine and did not perform a de novo review. *See* Appellant Br. at 24. Henry again relies on *Steele* to support the proposition that de novo review was required in this posture. *See id.* at 22–24. But Henry, again, misapplies the holding in *Steele*, which deals with waiver, and is inapposite.

In *Steele*, the Air Force Court of Criminal Appeals affirmed a conviction for indecent exposure as both legally and factually sufficient

but remanded for a rehearing on the sentence. *See Steele*, 83 M.J. at 189. After the sentencing rehearing, the appellant appealed his conviction a second time to the Air Force Court of Criminal Appeals, arguing for the first time that his indecent exposure charge was unconstitutionally vague, which the Air Force Court of Criminal Appeals decided not to consider. *See id.* 189–90. The Court of Appeals for the Armed Forces then set aside the judgment of the Air Force Court of Criminal Appeal and directed it to find whether the appellant's new constitutional claim was waived or forfeited, which would then determine how much discretion the Air Force Court of Criminal Appeals had to decline review of the new claim. *See id.* at 190–91.

Unlike in *Steele*, Henry admits that this case does not involve any waived or forfeited claims. *See* Appellant Br. at 24. Thus, *Steele* is inapposite. Moreover, contrary to Henry's representations, *Steele* does not go so far as to address the standard of review for the Air Force Court of Criminal Appeals when, like in this case, an appellant attempts to appeal the legal and factual sufficiency of his conviction twice on the same grounds even when those convictions were not at issue on remand. *See Steele*, 83 M.J. at 189 (noting that, under Article 66, the Air Force

Court of Criminal Appeals has discretion to grant relief notwithstanding a waiver or forfeiture.).

Henry next argues that the law-of-the-case doctrine is inappropriate for a factual-sufficiency review because "the law of the case doctrine only deals with questions of law." Appellant Br. at 25. Henry relies only on decisions from Texas State Appellate courts for the proposition that the law of the case doctrine only deals with questions of law and that it therefore fails the standard of review under Article 66. *See id.* But this argument is of no moment because, as the District Court described, the Air Force Court of Criminal Appeals in *Henry II* applied the law-of-the-case doctrine only after reviewing the factual and legal record to determine whether those charges were still supported legally and factually. Thus, the District Court explained, "[i]t would appear that if a court applied an entire factual sufficiency review as required under Article 66, but did so in determining if a decision was clearly erroneous a in this instance, this would still satisfy the Article 66 standard." JA76–77. As the District Court noted, this is exactly what the Air Force Court of Criminal Appeals did in this case. *See id.*

Specifically, the Court of Criminal Appeals explained that while "ordinarily, [it] would decline to revisit . . . the factual sufficiency of the previous affirmed offenses[,] based on the unique facts and circumstances involved in this case," the Court "considered all the evidence presented," and found that:

> the impact of the evidence adduced at the rehearing was not significantly different, and our original decision finding Appellant's contention that the evidence is not legally or factually sufficient to sustain these convictions to be without merit was neither clearly erroneous nor a manifest injustice.

*Henry II*, 2022 WL 278402, at \*2; JA105.

In reaching this determination, the court first reviewed "new" evidence adduced at the rehearing—focusing on any exculpatory evidence that might discredit EW's testimony. *Henry II*, 2022 WL 278402, at \*2; JA104. Starting with the record of events leading up to the rehearing, the court recounted the fact that EW was unwilling to participate in the rehearing until two weeks prior to the scheduled start date, and that in motion practice leading up to trial, EW was questioned about her description of and what may have led prosecutors to withdraw

the second specification[3] of sexual assault involving Henry and EW right before the start of the initial trial. *See Henry II*, 2022 WL 278402, at *2–3; JA105–107. The Air Force Court of Criminal Appeals noted that with regard to discovery surrounding the issue of the withdrawn specification of sexual assault, the military judge found no evidence that the government failed to provide "exculpatory evidence," but nonetheless "ruled that the Defense would have the full ability at the hearing to explore all issues arising from any such inconsistency." *Henry II*, 2022 WL 278402, at *3; JA107. The Court further noted that a prior prosecutor was also questioned about her role in reaching out to EW to discuss her testifying at the rehearing and to address what information was disclosed to defense counsel about the withdrawn sexual assault allegation prior to the original trial. *See Henry II*, 2022 WL 278402, at *2–4; JA105–107. The Court also emphasized that these facts related to EW's unwilling participation and the pre-trial discovery dispute "is

---

[3] As the District Court explained, "[w]here a charge sets forth an offense, a specification gives details to what the accused has done." JA66 n.3. Thus, "a military member can be charged with an offense with several specifications giving detail as to why that charge was brought." *Id.*

37

integral to our analysis of the errors [Henry] alleges." *Henry II*, 2022 WL 278402, at *1; JA104.

The Court further noted that it reviewed all the testimony in the record. *See Henry II*, 2022 WL 278402, at *5 ("We reviewed the testimony prior to our original opinion and again for the appellate review."); JA109. And after reviewing this testimony, the court found that EW's credibility was no more an issue at the rehearing than at the original hearing. *Id.* In both hearings, the court stated that:

> EW was cross-examined on a number of inconsistencies. . . .
> At the original trial, EW was challenged regarding the fact
> that she did not report any of the allegations, the absence of
> evidence of damage to her front door, and the absence of any
> physical manifestations of the choking—no red marks or
> bruising on her neck, no petechiae in her eyes, and no
> hoarseness. At the rehearing, EW was similarly challenged on
> these same inconsistencies, as well as the fact that she
> reported the sexual encounter after the charged rape as a
> second sexual assault.

*Henry II*, 2022 WL 278402, at *8; JA114.

The court further noted that "[b]ecause the assault and battery and communications of a threat charges were not an issue at the rehearing, there was understandably less detail in her testimony regarding those incidents." *Id.* In addition, despite the fact that the events in Charges I, II, and III regarding EW all occurred on the same date, the court

recounted the compelling evidence regarding these charges in the first trial, which were not available to members at the rehearing.  *See Henry II*, 2022 WL 278402, at *4; JA108.  This included, for example, Henry's own testimony in which he described his relationship with EW as "'dramatic'" and that the two would go from "'loving each other to hating each other to [having] make-up sex.'"  *Id.*

Thus, the court concluded that that in light of "all the evidence presented, . . . the impact of the evidence adduced at the rehearing was not significantly different, and our original decision finding [Henry's] contention that the evidence is not legally or factually sufficient to sustain these convictions to be without merit was neither clearly erroneous nor a manifest injustice."  *Henry II*, 2022 WL 278402, at *2; JA105.

As a final matter, despite the de novo review just described, Henry argues that the review by the Air Force Court of Criminal Appeal was insufficient because the court did not state expressly that it was convinced of Henry's guilt beyond a reasonable doubt and instead concluded only that after that "the decision of a previous panel of this court was neither clearly erroneous nor worked a manifest injustice."

Appellant Br. at 27. But, again, this argument is of no moment because in order "[t]o meet th[e] manifest injustice exception, [the Air Force Court of Criminal Appeals] must [find] more than that 'a reasonable doubt exists in the light of the new evidence.'" *Wood v. Hall*, 130 F.3d 373, 379 (9th Cir. 1997) (citing *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). In other words, the fact that the Air Force Court of Criminal Appeals found that it would not be clearly erroneous or manifestly injustice to maintain Henry's convictions under Charges II and III means that it concluded that the evidence supported those convictions, beyond a reasonable doubt.

## C.  Henry's Sentence is Not Void.

Henry argues that the Air Force Court of Criminal Appeals in *Henry II* "used the law of the case doctrine to avoid a *de novo* review," of his sentence and therefore failed to conform with Article 66. Appellant Br. at 27. That is incorrect. The Air Force Court of Criminal Appeals did not use the law-of-the-case doctrine to review of Henry's sentence; the court applied the law-of-the case doctrine only to the convictions that a prior panel had already previously affirmed (and only then after conducting a de novo review of all the evidence as just discussed). *See*

*Henry II*, 2022 WL 278402, at \*2–5 (discussing the application of the law of the case doctrine only to the Court's analysis as to whether the "newly discovered evidence and acquittal at rehearing," "impact[ed] . . . the previously affirmed findings."); JA104–109.  Indeed, regarding Henry's new sentence, the Air Force Court of Criminal Appeals reviewed the entire record before it and determined that the sentence was "correct in law and fact."  *Henry II*, 2022 WL 278402, at \*8, 10; JA114, 117.

Henry next argues that his reduced sentence never received Article 66 review "because his previous sentence was set aside and did not exist at the re-hearing."  Appellant Br. At 28.  But even with the prior sentence set aside, the Air Force Court of Criminal Appeals in *Henry II* had and reviewed the entire record before affirming Henry's sentence.  *See Henry II*, 2022 WL 278402, at \*8; JA114.  Specifically, the Court addressed whether the evidence in the record was sufficient to support Henry's lower sentence by focusing, particularly on exculpatory evidence in the record to determine whether Henry's sentence was sufficient in law and fact.  *See id.* at \*5–9; JA109–116.

But again, the Air Force Court of Criminal Appeals found that having reviewed EW's testimony, it was "not persuaded that the 'new'

evidence adduced at the rehearing destroyed her credibility and disprove[d] her account of the events surrounding the offenses." *Henry II*, 2022 WL 278402, at *8; JA114. The court noted that the rehearing challenged the same inconsistencies in EW's testimony that were challenged in the original hearing. *See id.* In addition, the court found that a former prosecutor's interactions with EW prior to the rehearing had not affected EW's willingness to testify because EW had already decided to testify when the prosecutor contacted her. *See Henry II*, 2022 WL 278402, at *9; JA114–115.

The court then addressed each side's case during sentencing, noting that while Henry presented a "robust" case, his counsel's remarks at the end of sentencing may not have resonated well with the members. *Henry II*, 2022 WL 278402, at *9; JA115. The court also recounted that throughout the sentencing, the members were able to observe EW knowing that they had already found Henry not guilty of raping her. *See id.* That said, the court recognized that the offenses for which Henry was convicted were "not an issue at the rehearing" and "were not directly associated with the charged sexual offenses." *Henry II*, 2022 WL 278402,

at *8; JA114.  Thus, the Air Force Court of Criminal Appeals concluded that having reviewed the record before it:

> The sentence imposed was a determination by the members that Appellant's crimes warranted punishment and while EW's participation obviously was a factor in that sentence, the offenses for which Appellant was sentenced were not litigated at the rehearing.

*Henry II*, 2022 WL 278402, at *9; JA115.

Henry next argues that it is not possible to conduct a proper Article 66 review if the court failed to first conduct a proper Article 66 review of the underlying Charges.  *See* Appellant Br. at 28.  But because the Court did conduct a sufficient Article 66 review of Charges II and III, this argument lacks merit.

Given this record of review, Henry fails to establish that the Air Force Court of Criminal Appeals' review of his sentence after rehearing was neither full and fair nor void.

\*     \*     \*

Henry's undeveloped claim that the Air Force Court of Criminal Appeals committed harmful error rising to the level that would render his conviction or sentence void is also without merit.  Because the Court fully and fairly considered Henry's claims that the facts and law

43

supporting his convictions under Charges II and III and resentence were insufficient—by conducting a proper Article 66 review of Charges II and III not only once, but twice, and by conducting a proper de novo review of Henry's resentence—the military court's judgment cannot be deemed void.  *See New*, 448 F.3d at 406–08.

## IV.  Henry Cannot Establish that the Military Court's Judgment Violated His Due Process Rights or Fails to Conform with <u>Supreme Court Standards.</u>

As a final matter, Henry also claims that because the Air Force Court of Criminal Appeals violated his due process rights when it conducted less than de novo review the Court is required to apply *de novo* review and determine whether the military courts' decision conformed to Supreme Court due process standards.  *See* Appellant Br. at 16.  None of these arguments have any merit.

As an initial matter, Henry never raised any due process claim with the military courts, and cannot do so, now, for the first time on collateral review.  A federal court will not normally entertain a collateral attack on a military court's judgment unless all available military remedies have been exhausted.  *See Councilman*, 420 U.S. at 758; *New v. Cohen*, 129 F.3d 639, 643 (D.C. Cir. 1997) (same); *see also United States v.*

*Mandanici*, 205 F.3d 519, 524 (2d Cir. 2000) ("Coram nobis is 'not a substitute for appeal[.]'" (quoting *Foont v. United States*, 93 F.3d 76, 78 (2d Cir. 1996))); *United States v. Dyer*, 136 F.3d 417, 422 (5th Cir. 1998) ("In *Morgan*, the [Supreme] Court emphasized that the writ of coram nobis could not be used as a substitute for appeal and should only be employed to correct errors 'of the most fundamental character.'" (quoting *United States v. Morgan*, 346 U.S. 502, 512 (1954))).

Although Henry appealed the *Henry II* decision to the Court of Appeals for the Armed Forces, Henry never raised in that appeal any claim that his due process rights were violated because the lower court had applied less than full review pursuant to Article 66. *See* Henry Armed Forces Br., 2020 WL 2061273 (raising the question of whether the Air Force Court of Criminal Appeals incorrectly applied the law-of-the-case doctrine, but not whether the review applied amounted to a violation of due process). Therefore, any due process claim that Henry attempts to raise for the first time in federal court is waived. *See, e.g.*, *Bahlul v. United States*, 840 F.3d 757, 778 (D.C. Cir. 2016) ("No procedural principle is more familiar than that a constitutional right, or a right of any other sort, may be forfeited in criminal as well as civil cases by the

failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." (citing *United States v. Olano*, 570 U.S. 725 (1993) (cleaned up)).

Second, even were the Court to consider Henry's claim that his due process rights were violated when the Air Force Court of Criminal Appeals failed to exercise Article 66 review, such claim would not require de novo review. *See* Appellant Br. at 16. Henry relies only on this Court's holding in *Sanford* to support his argument that on collateral review, his due process claim requires de novo review. *See id.* (citing *Sanford*, 598 F.3d at 31). But contrary to Henry's representations, the *Sanford* Court never reviewed a petitioner's due process claims de novo; rather the Court applied only the more deferential full and fair consideration test to determine whether the military tribunal fully and fairly considered petitioner's due process claims and that the military court's due process decision conformed with Supreme Court standards. *See Sanford*, 586 F.3d at 334 (finding that the military court "gave 'full and fair consideration' to [the] due process claim in light of the fact that its resolution was predetermined by binding precedent.").

Under *Sanford*, here, because a full and fair review shows that the Air Force Court of Criminal Appeals properly applied Article 66 review to Henry's convictions and sentence, there is no process purportedly due to Henry, that the Air Force Court of Criminal Appeals failed to afford him.

Henry nonetheless argues that the Court must also determine whether the military court's decision "conform[s] to Supreme Court standards." Appellant's Br. at 16–17. But a federal court will only review a military court's decision in conformity with Supreme Court standards when that decision is a constitutional decision, addressing a constitutional claim. *See Kauffman*, 415 F.2d at 997 (reviewing constitutional decisions addressed by a military court on collateral attack to make sure it conformed with supreme court standards); *Sanford*, 586 F.3d at 35 (same). To hold otherwise would require federal courts to consider sua sponte whether a military court decision "conforms with Supreme Court standard" no matter what, if any standard is identified. Here, again, however, because Henry never raised any constitutional claim on direct appeal, no military court reached any constitutional

decision that requires review in conformity with Supreme Court standards.

Moreover, even were the Court to apply this additional standard in this case, Henry does not identify what Supreme Court standard the Air Force Court of Criminal Appeal's judgment did not conform to. *See e.g. Sanford*, 586 F.3d at 35 (reviewing the Supreme Court standard with which petitioner claimed the military court's decision failed to conform). Thus, any further analysis of this undeveloped argument is of no moment because Henry cannot establish that the decision indeed failed to conform to any such standard.

Because the record shows that the Air Force Court of Criminal Appeals conducted a full and fair review of each of Henry's claims by applying Article 66 review to his second appeal challenging his convictions and sentence this judgment is not void. Moreover, each of Henry's arguments to the contrary fails.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

BRIAN P. HUDAK
JANE M. LYONS
Assistant United States Attorneys

   */s/ Anna D. Walker*
ANNA D. WALKER
Assistant United States Attorney
601 D Street NW
Washington, D.C. 20530
(202) 252-2544
anna.walker@usdoj.gov

July 15, 2024                    *Counsel for the United States of America*

## CERTIFICATE OF SERVICE

On July 15, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system, which will effectuate service upon all registered users.

*/s/ Anna D. Walker*
ANNA D. WALKER
Assistant United States Attorney

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 10,999 words.

This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)–(6) because it has been prepared in 14-point Century Schoolbook font, a proportionally spaced typeface.

*/s/ Anna D. Walker*
ANNA D. WALKER
Assistant United States Attorney